IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARVIN G. BLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06-3072 |
| | ) |
| RICHARD RAHAR, | ) |
| ADAM LADAGE, and | ) |
| CITY OF PANA, | ) |
| | ) |
| Defendants. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendants' Motion for Summary Judgment (d/e 36). For the reasons stated below, the Defendants' Motion is allowed in part, and in part the Court reserves judgment.

## APPLICABLE LAW

A motion for summary judgment must be granted "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ.

P. 56(c)). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Herman v. Nat'l Broad. Co., 744 F.2d 604, 607 (7th Cir. 1984). Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" McKenzie v. Ill. Dept. of Transp., 92 F.3d 473, 479 (7th Cir. 1996) (quoting Celotex, 477 U.S. at 322).

To successfully oppose a motion for summary judgment, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts. See Matsushita Elec. Indus. Co., 475 U.S. at 586. Instead, he must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Id. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

2

Id. In determining whether a genuine issue exists, courts should construe "all facts and reasonable inferences from the record in the light most favorable to . . . the non-moving party." Moser v. Ind. Dept. of Corr., 406 F.3d 895, 900 (7th Cir. 2005). Courts, however, are "not required to draw every conceivable inference from the record. [They] need draw only reasonable ones." Tyler v. Runyon, 70 F.3d 458, 467 (7th Cir. 1995) (internal quotation marks omitted).

## FACTS

Plaintiff Marvin Bland (Bland) was injured in an altercation with Defendants Pana Police Officers Richard Rahar (Rahar) and Adam Ladage (Ladage) on April 27, 2004. The events of that morning are at issue in this lawsuit. The parties agree that at 1:41 a.m., Ladage and Rahar responded to the report of a possible burglary at 813 East First Street, Pana, Illinois. Ladage arrived first, dressed in his police uniform. He parked a police car four or five houses from the reported burglary location and approached it on foot, hoping to catch the burglar. The parties disagree on what happened next.

Defendants claim that as Ladage walked down the sidewalk, Bland appeared in the driveway of the house reportedly burglarized. Bland was

3

the only individual in the area, and Ladage thought he might be leaving the scene of the burglary.  Ladage asked Bland what was going on, and Bland failed to respond to his question.  Defendants assert that Bland quickly began crisscrossing away from Ladage toward what appeared to be Bland's car on the other side of the street.  Defendants claim that Ladage ran between Bland and the car and repeatedly told Bland to stop and get on the ground.  Bland reportedly refused to cooperate, so Ladage pepper-sprayed him to prevent him from getting into the car.

According to Defendants, Ladage then tried to grab Bland's wrist to handcuff him, but Bland pulled away and walked to the front porch of the house at 812 East First Street.  Bland began to yell for the owner, knocking on the locked door and trying to open it.  He shouted, "Tell them, Sally, I have been here since 8:30 p.m. and I have been in your garage."  <u>Motion for Summary Judgment (d/e 36)</u>, at 5 ¶ 27.  Ladage then grabbed Bland's left wrist to force it behind his back, but Bland resisted by twisting and pulling.

At some point, Rahar arrived and observed the struggle on the porch. Defendants assert that Rahar thought Bland was pulling away from Ladage as Ladage was trying to control Bland's hands.  Either Ladage or Rahar, or both of the officers, then took Bland to the ground and handcuffed him.

They took him off the porch, searched him, and tried to put him in a squad car. Bland refused, and before they could get him into the car, his son Marvin Bland Jr. (Marvin Jr.) arrived.

Defendants claim that Marvin Jr. then began struggling with Ladage, and Rahar placed Bland off to the side of the road so he could help Ladage. While the officers were struggling with Marvin Jr., Bland got to his feet and charged at them aggressively. Bland threatened to kick Rahar in the head. Ladage struck Bland in the chest with the heel of his hand, knocking Bland to the ground. Several times Bland got up and Ladage knocked him back to the ground. Eventually, they had to "hog tie" him by tying a rope from his feet to his handcuffs to keep him from getting up.

According to Bland, the sequence of events differed dramatically. Bland claims that he arrived on the scene when his car died. He left the car and walked up to the house at 812 East First Street. He had climbed a few of the porch steps when Ladage shined a flashlight in his face. He continued up the steps to knock on the door, and Ladage jumped on his back. Ladage began choking him with a flashlight or a nightstick, and hit him on the back of the head. Bland fell to the floor, and Ladage sprayed him with pepper spray. Assuming it was a police officer who sprayed him,

5

Bland said over and over, "I am not resisting." Response to Second Motion for Summary Judgment (d/e 37), at 8, ¶ 15. Bland was handcuffed, with his hands behind his back.

Bland asserts that either Ladage or Rahar then pulled him by the feet or pants from the porch into the yard. Bland's head hit at least a couple of the porch steps on the way down. In the yard, one or both of the officers hog-tied Bland. A rope passed from his ankles, which were tied together, up to the handcuffs. Bland yelled "What's going on?" and Ladage kicked him several times. Rahar also might have kicked him. Bland yelled that his ribs were broken and he could not breathe. Ladage squeezed Bland's testicles so hard that he screamed. Ladage pulled on the rope running between Bland's ankles and handcuffs and said, "He wasn't hurt." Id. at 10, ¶ 30. According to Bland, a call to 911 was cancelled, and only when he could not get up and a deputy sheriff appeared at the scene did one of the officers make another call.

More than a year after this incident, the parties agree, Bland filed a Petition for Chapter 7 Bankruptcy in the United State Bankruptcy Court for the Central District of Illinois. He reported in his Petition that he had no contingent or unliquidated claims, and on October 31, 2005, the

Bankruptcy Court issued an Order of Discharge.

On April 19, 2006, Bland filed a three-count Complaint in this Court alleging violations of 42 U.S.C. § 1983. <u>Complaint (d/e 1)</u>. Count I alleges that the force Ladage and Rahar employed against Bland violated his Fourth Amendment right to be free of unreasonable seizure. Count II alleges that Ladage and Rahar conspired with each other to deny Bland access to the courts to redress the injuries he suffered. Count III alleges that the City of Pana intentionally trained its employees to use an improper amount of force or was deliberately indifferent to their training and supervision on this issue.

On August 16, 2006, after Defendants filed a summary judgment motion noting Bland's failure to declare his § 1983 claims in his bankruptcy action, Bland filed a motion to reopen his bankruptcy case to list the instant case as a contingent and unliquidated claim. The Bankruptcy Court granted his motion on October 6, 2006. He filed an Amended Schedule B that states: "Debtor has a contingent and unliquidated claim involving the Debtor vs. City of Pana, which is a Civil Liberty suit filed herein by Debtor." <u>Motion for Summary Judgment, Exhibit 3 Part 2</u>, at 23. On December 19, 2006, the Bankruptcy Court granted the Bankruptcy Trustee's application to hire Bland's counsel to pursue Bland's case against

7

"the Pana Police Department." <u>Response to Motion for Summary Judgment</u>, Exhibit 10.

Defendants filed their second Motion for Summary Judgment August 31, 2007. They request judgment on each of the three counts.

## ANALYSIS

In his Response to Defendants' Motion, Bland conceded that he cannot prove Counts II and III. <u>Response to Motion for Summary Judgment</u>, at 2. Therefore, Defendants' Motion is allowed as to these Counts. Bland maintains, though, that summary judgment is not appropriate as to Count I. Defendants assert that Bland cannot prove that Ladage's or Rahar's application of force violated the Fourth Amendment ban on unreasonable seizure. Moreover, they argue, even if Bland could prove his allegation, the doctrines of qualified immunity and judicial estoppel support a grant of summary judgment here.

For the reasons stated below, the Court finds that a genuine issue of material fact exists on Count I and that Ladage and Rahar are not entitled to qualified immunity. The Court also finds, however, that because Bland still has not accounted properly for his failure to disclose the instant claim in his prior bankruptcy action, judicial estoppel may prevent this suit.

8

Thus, the Court reserves judgment on Defendants' Motion as to Count I.

I.    EXCESSIVE FORCE

Bland filed suit under 42 U.S.C. § 1983, which "merely provides a method for vindicating federal rights elsewhere conferred." <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989) (internal quotation marks omitted). To succeed on a § 1983 claim, a plaintiff must prove that: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>Case v. Milewski</u>, 327 F.3d 564, 566 (7th Cir. 2003). The first element is not in dispute here, so the Court need consider only the second.

Analysis must begin with identification of the specific right allegedly infringed. <u>Graham</u>, 490 U.S. at 394. Here, Bland alleges that Ladage and Rahar employed excessive force in executing an investigatory stop, which violated his Fourth Amendment right to be free of unreasonable seizure. <u>See</u> <u>Complaint</u>, at 5 ¶ 26; <u>Graham</u>, 490 U.S. at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . .").

A "seizure" triggering the Fourth Amendment's protections occurs when the Government uses physical force or a show of authority to restrain a citizen's liberty. Graham, 490 U.S. at 395 n.10. "An investigative stop becomes a seizure at the point when a reasonable person would feel that he is not free to leave." Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004). Bland's Complaint does not allege that the officers lacked reasonable suspicion to conduct an investigatory stop; he argues only that the "beating" they allegedly inflicted in seizing him was unconstitutional. See Complaint, at 5 ¶ 26; Response to Motion for Summary Judgment, at 13. Thus, the Court addresses only whether the officers employed excessive force.

Claims that law enforcement officers used excessive force in the course of a seizure are analyzed under the Fourth Amendment "reasonableness" standard. Graham, 490 U.S. at 395. This inquiry requires courts to balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests at stake. Id. at 396. The analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others,

and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The reasonableness of the force must be assessed from the perspective of a reasonable officer on the scene, not in hindsight. Id.

Applying Graham's four-factor test, and viewing all disputed evidence in the light most favorable to Bland, there remain material factual questions that only a jury can decide. First, the crime of which the Defendants suspected Bland--burglary--is serious, but not necessarily violent. Second, Bland claims that he never displayed any behavior that would have suggested he posed an immediate threat. Most significantly, he asserts that Ladage kicked him repeatedly and squeezed his testicles while he was hog-tied and unable to offer any resistence. Bland alleges that Rahar may have kicked him while he was hog-tied as well. If these allegations are true, Defendants could not have reasonably believed Bland posed an immediate threat, while lying hog-tied on the ground. Third, Bland asserts that he never resisted arrest and repeatedly told Defendants he was not resisting. Finally, Bland says he never attempted to flee from the officers. If a jury finds Bland's version of the facts to be true, it could find that Defendants employed excessive force.

II.     QUALIFIED IMMUNITY

11

Defendants argue that even if questions of fact remain, they are entitled to summary judgment based on qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 471-72 (7th Cir. 1997) (internal quotation marks omitted). Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S. 194, 206 (2001).

Courts employ a two-step analysis in determining whether qualified immunity applies. First, they must determine whether the facts viewed in the light most favorable to the plaintiff show that the defendants' conduct violated a constitutional right. Id. at 201. If the plaintiff cannot establish the violation of a constitutional right, then qualified immunity does not apply. Id. As set forth above, however, if a jury finds the facts are as Bland alleges, Bland can establish a Fourth Amendment violation.

Second, courts must determine whether the constitutional right

allegedly violated "was clearly established." Id. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). Once a defendant pleads qualified immunity, the plaintiff must demonstrate the existence of the clearly established constitutional right. Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1174 (7th Cir. 1997). If the right was clearly established, the defendant is not entitled to qualified immunity. Sallenger v. Oakes, 473 F.3d 731, 739 (7th Cir. 2007).

Defendants raised qualified immunity as an affirmative defense, so Bland bears the burden of proving a clearly established constitutional right. See Amended Answer (d/e 22), at 5. A right is clearly established if it is:

> sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (internal citations omitted). Viewing the evidence in the light most favorable to Bland, the Court concludes that a reasonable officer would have known that choking

13

and pepper-spraying an individual who never refused to cooperate and kicking and squeezing the testicles of a hog-tied man lying on the ground is unconstitutionally excessive. See Proffitt v. Ridgway, 279 F.3d 503, 505 (7th Cir. 2002) (holding that once an individual is in custody, police have a duty to provide for his safety); Clash v. Beatty, 77 F.3d 1045, 1049 (7th Cir. 1996) ("It is clear . . . that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."); Frazell v. Flanigan, 102 F.3d 877 (7th Cir. 1996) (holding officers' force excessive where they kicked and beat with a nightstick an individual who was already restrained), overruled on other grounds by McNair v. Coffey, 279 F.3d 463 (7th Cir. 2002). Because Bland's evidence shows that Ladage committed all of these acts and Rahar additionally may have kicked Bland after he was restrained, neither is entitled to qualified immunity.

III.  JUDICIAL ESTOPPEL

Defendants also argue that summary judgment is appropriate based on judicial estoppel. In their Amended Answer, Defendants raised judicial estoppel as an affirmative defense. Under the doctrine of judicial estoppel, "a debtor in bankruptcy who receives a discharge (and thus a personal

financial benefit) by representing that he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim." Biesek v. Soo Line R. Co., 440 F.3d 410, 412 (7th Cir. 2006). Allowing a debtor to collect on a claim he concealed during bankruptcy proceedings would cheat his creditors, because "as a technical matter the estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims." Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir. 2006). If any recovery is to be had, it belongs to the creditors first and foremost. Id.

Bland reopened his bankruptcy case, suggesting that he intends his creditors to benefit from the instant action, but he described his claim only as "Debtor vs. City of Pana, which is a Civil Liberty suit filed herein by Debtor." Motion for Summary Judgment, Exhibit 3 Part 2, at 22. Bland neglected to disclose that he had claims against Ladage and Rahar. Because these claims against Ladage and Rahar are the only claims that could survive Defendants' summary judgment motion, Bland again must amend his bankruptcy disclosures to indicate that he has claims against these two individuals.

Moreover, Bland cannot prosecute this action; only the Trustee in his bankruptcy action can. See Biesek, 440 F.3d at 413. The fact that Bland

may intend his creditors to benefit from any recovery in this case is not enough. Despite the parties' agreement that the Bankruptcy Trustee has retained Bland's attorney to prosecute this case on behalf of the estate, Bland remains the Plaintiff here. See Response to Second Motion for Summary Judgment, at 11 ¶ 35. This case can continue only if the Trustee intervenes and takes over the suit on behalf of the Estate. See Biesek, 440 F.3d at 413-14; Becker v. Verizon North, Inc., 2007 WL 1224039, at *1 (7th Cir. April 25, 2007); Eastman v. Union Pacific R. Co., 493 F.3d 1151, 1160 (10th Cir. 2007). Thus, unless the Trustee intervenes, this Court will grant Defendants summary judgment based on judicial estoppel.

THEREFORE, Defendants' Motion for Summary Judgment (d/e 36) is ALLOWED on Counts II and III, but the Court reserves judgment on Count I until December 3, 2007. If by this date Bland has amended his bankruptcy disclosures to reflect a claim against Rahar and Ladage and the Trustee in bankruptcy has intervened in the instant case, taking over this suit on behalf of the Estate, the Court will deny Defendants' Motion on Count I. If these events have not taken place, the Court will allow Defendants' Motion on Count I. Accordingly, the pretrial conference set for December 3, 2007, at 10:00 a.m. and the trial set for December 4, 2007, at

9:00 a.m. are cancelled. The pretrial conference is rescheduled for January 25, 2008, at 10:00 a.m. and the trial for February 5, 2008, at 9:00 a.m.

IT IS THEREFORE SO ORDERED.

ENTER: October 31, 2007

    FOR THE COURT:

                                          s/ Jeanne E. Scott
                                          JEANNE E. SCOTT
                                UNITED STATES DISTRICT JUDGE